# IN THE COURT OF APPEALS OF IOWA

No. 19-1550
Filed January 23, 2020

**IN THE INTEREST OF M.S.,**
**Minor Child,**

**K.R., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the termination of her parental rights to a child. **AFFIRMED.**

Katharine Massier of Branstad & Olson Law Office, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to a child, born in 2018.[1] She contends (1) the record lacks clear and convincing evidence to support the grounds for termination cited by the district court and (2) the department of human services failed to make reasonable efforts toward reunification.

## I. *Grounds for Termination*

The mother had three children, two of whom were the subject of child-in-need-of-assistance proceedings dating back several years. Among the allegations precipitating department involvement with the older children was an assertion by one of them that the man with whom the mother was having a relationship asked the nine-year-old child to engage in sex acts. The child told her mother, who reported the matter to the department.

The mother continued her relationship with the man notwithstanding her daughter's disclosure. Eventually, she gave birth to the child who is the subject of this appeal. The man alleged to have abused her older child was the father of this child.

The child was removed from parental custody three days after his birth, based on the history with the older children. The child was later adjudicated in need of assistance. He remained out of the mother's custody through the termination hearing.

The district court terminated the mother's parental rights pursuant to two statutory provisions. We will focus on Iowa Code section 232.116(1)(h) (2019),

---

[1] The child's father voluntarily dismissed his appeal of an order terminating his parental rights.

which requires proof of several elements, including proof the child cannot be returned to the mother's custody. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). The district court determined the State proved the ground based on the "mother's failure to act in an appropriate protective capacity for any of her children, [the] [m]other's inability or unwillingness to recognize unsafe relationships, and her continued relationship with individuals who pose a safety risk to her children." On our de novo review, we find support for this reasoning.

We begin with the mother's testimony. She acknowledged ongoing interactions with the father of her youngest child. When asked why she continued to have contact with him she answered, "I think there's a lot of things that I'm trying to figure out and understand and sort out, and I don't know." When asked if he was a safe person to parent the child, she answered, "I don't know." When asked if she was minimizing her relationship with the father she responded, "I think I don't know. I think I'm really trying to figure it out." Finally, when asked if she thought she was currently setting appropriate boundaries with the father, she responded, "I think I have to figure out what those look like." The mother's testimony alone supports the district court's finding that she failed to grasp the seriousness of the threat the father posed to the child.

We recognize the mother was "consistent in attendance" at therapy sessions to address her diagnoses of "unspecified trauma" and "stressor-related disorder," which underlay her difficulties safeguarding her children. We also are cognizant of the therapist's opinion that the mother's "mental health symptoms

[were] not impairing her parenting." We have no reason to quarrel with the opinion, as far as it went. But the therapist also said the mother was continuing to process boundaries with the father, testimony that corroborates the mother's equivocal statements at the termination hearing about whether she understood the ramifications of her relationship with the father.

The mother had yet to prioritize the safety of her child. While the department overstated the import of certain contacts she had with the father,[2] we are persuaded by the caseworker's testimony that the mother "was not able to gain insight of why her relationship with [the father] [was a] protective concern" and "was not able to build the protective capacities so that she [could] . . . keep her child safe." Clear and convincing evidence supports the district court's determination that the child could not be returned to the mother's custody at the time of the termination hearing.

## II. *Reasonable Efforts*

The department has an obligation to make reasonable efforts to reunify parent and child. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The mother argues the department fell short of its obligation by "cancel[ing] a significant number of" visits with the child. She testified sixteen to eighteen visits were cancelled and only one was made up.

---

[2] The department highlighted two FaceTime calls the mother had with the father during her supervised visits with the child, as evidence of ongoing inappropriate contact. However, the service provider who was present during the calls noted that one of them was initiated by the father to inform the supervisor he was sick and could not participate in his supervised visit with the child. The provider testified the call lasted approximately four minutes. The second call was similarly initiated by the father to ask the service provider about changes in his visit times because he did not have the service provider's number.

Service provider notes of visits corroborate the mother's testimony. They document multiple instances of provider-initiated delays in visitation start times. The department employee charged with overseeing the case disagreed that only an hour was made up, but she could not recall the precise number of hours the department added. However, a report prepared by the department stated the department caseworker met with the service provider and her supervisor and reached an agreement to have the provider "add 30 minutes time to exi[s]ting visits" in addition to providing one extra visit. Based on this agreement and provider notes documenting extensions of certain visits, we conclude the department satisfied its reasonable-efforts mandate.

We affirm the termination of the mother's parental rights to her child.

**AFFIRMED.**